FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 22, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAWN F.,<br>                    Plaintiff,<br><br>        vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>                    Defendant. | No. 1:17-cv-03180-MKD<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 18, 22 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 18, 22. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 18, and denies Defendant's Motion, ECF No. 22.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159

(quotation and citation omitted). Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

ORDER - 3

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 29, 2012, Plaintiff protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging an onset date of October 25, 2010. Tr. 322-29. The applications were denied initially, Tr. 200-03, and on reconsideration, Tr. 207-10. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on October 30, 2013. Tr. 48-84. On November 14, 2013, the ALJ denied Plaintiff's claim. Tr. 179-94. On May 29, 2015, the Appeals Council remanded Plaintiff's claim for further proceedings. Tr. 195-99. On April 15, 2016, Plaintiff appeared at a second

hearing before an ALJ. Tr. 85-122. On October 20, 2016, the ALJ denied

Plaintiff's claim. Tr. 22-47.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful

activity since October 25, 2010, the alleged onset date. Tr. 28. At step two, the

ALJ found Plaintiff had the following severe impairments: degenerative disc

disease of the cervical spine post surgery, thoracic spine, and lumbar spine; major

depressive disorder; and anxiety disorder. *Id.* At step three, the ALJ found

Plaintiff did not have an impairment or combination of impairments that meets or

medically equals the severity of a listed impairment. Tr. 28-29. The ALJ then

concluded that Plaintiff had the RFC to perform sedentary work with the following

limitations:

> [Plaintiff] can occasionally operate foot controls; must be permitted to take a
> break of at least fifteen minutes at least every two hours; never climb
> ladders, ropes, or scaffolds; occasionally climb ramps and stairs;
> occasionally balance, stoop, kneel, and crouch; never crawl; occasionally
> reach overhead; frequently reach in all other directions bilaterally; avoid
> concentrated exposure to vibrations and hazards; is limited to unskilled or
> semi-skilled tasks consistent with specific vocational preparations ("SVP")
> up to SVP 4 only; and can have occasional contact with the public and
> coworkers.

Tr. 31.

At step four, the ALJ found Plaintiff was unable to perform any past relevant

work. Tr. 39. At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, and testimony from a vocational expert, there

ORDER - 7

were other jobs that existed in significant numbers in the national economy that

Plaintiff could perform, such as electronics assembler, time keeper, and addresser.

Tr. 40.  The ALJ concluded Plaintiff was not under a disability, as defined in the

Social Security Act, from October 25, 2010, through October 20, 2016, the date of

the ALJ's decision.  Tr. 41.

On August 16, 2017, the Appeals Council denied review, Tr. 1-6, making

the ALJ's decision the Commissioner's final decision for purposes of judicial

review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability income benefits under Title II and supplemental security income

benefits under Title XVI of the Social Security Act.  ECF No. 18.  Plaintiff raises

the following issues for this Court's review:

1.  Whether the ALJ properly weighed Plaintiff's symptom claims;

2.  Whether the ALJ properly weighed the medical opinion evidence;

3.  Whether the ALJ properly weighed the lay opinion evidence; and

ECF No. 18 at 1-2.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her subjective symptom claims. ECF No. 18 at 4-11. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.[1] SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she

---

[1] At the time of the ALJ's decision in October 2016, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016). The ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded effective June 14, 2018, in favor of the more comprehensive SSR 16-3p. Neither party argued any error in this regard.

need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has

ORDER - 10

received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3) (2011). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 38.

### 1. Daily Activities

The ALJ found Plaintiff's daily activities were inconsistent with the level of impairment she alleged. Tr. 38-39. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are

transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Here, the ALJ first found as a general matter that Plaintiff's daily activities were not strong evidence of disability because they could not be objectively verified and because they could not clearly be attributed to Plaintiff's impairments "as opposed to other reasons." Tr. 38. The ALJ did not apply this analysis to any specific evidence in the record. *Id.* Instead, the ALJ rejected evidence of Plaintiff's activities because the ALJ found that daily activities evidence as a general category was not reliable. Tr. 38. However, the regulations explicitly authorize the Commissioner to consider, among other factors, a claimant's daily activities as evidence that may be used to evaluate a claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011). The ALJ's categorical rejection of daily activities evidence is inconsistent with the regulations and does not provide clear and convincing reason to discredit Plaintiff's symptom testimony.

The ALJ also considered the specifics of Plaintiff's daily activities. First, the ALJ summarized Plaintiff's daily activities as Plaintiff reported them in a disability report, noting that Plaintiff reported she could not style her hair due to pain and weakness; that she did not drive long distances or make dinners; that she was barely to make breakfast and take her son to school after waiting an hour and a half for her morning pain medication to take effect; that she was unable to perform household tasks like laundry, washing dishes, making beds, or vacuuming; that she was unable to engage in physical activities with her son other than swimming; that she had no social life; and that she had a difficult time keeping track of appointments and paying bills on time. Tr. 32 (citing Tr. 376). The ALJ ended this summary by concluding without explanation that Plaintiff's described daily activities were inconsistent with her allegations of disabling symptoms and limitations. *Id.* In a later discussion of Plaintiff's daily activities, the ALJ found that Plaintiff's activities of cleaning out a room once, taking trips to visit family, swimming, walking, staying active with her son, and being a single mom to a nine-year old son who was active in sports indicated that Plaintiff was less impaired than she alleged. Tr. 38-39.

Although the ALJ summarized Plaintiff's testimony, Tr. 31-32, and summarized Plaintiff's daily activities, Tr. 31-32, 38-39, the ALJ did not identify what in Plaintiff's symptom testimony was inconsistent with her daily activities or

explain how it was inconsistent. Indeed, some of the evidence identified by the ALJ supports Plaintiff's symptom claims. For example, although the ALJ cited Plaintiff's description of significant limitations in her ability to perform personal care or household chores to conclude that her activities were inconsistent with her pain allegations, Tr. 32, this evidence is consistent with allegations of substantial pain. *See* Tr. 376.

Additionally, a claimant's ability to engage in mild therapeutic physical activity does not necessarily undermine the claimant's pain allegations. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (certain activities such as limited walking for exercise do not detract from a claimant's credibility as to overall disability); *Jordan v. Astrue*, 262 F. App'x 843, 845 (9th Cir. 2008) (unpublished) (claimant's ability to do some therapeutic exercises was not inconsistent with allegation that he needed to lie down regularly to alleviate pain). Here, the mild physical activities the ALJ identified as inconsistent with Plaintiff's allegations, including walking and swimming, were recommended by Plaintiff's treating provider as supportive care for her pain. Tr. 569. Furthermore, if childcare activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). The ALJ

found that Plaintiff's ability to serve as a single mother to her son was inconsistent with her alleged disability. Tr. 39. However, the ALJ did not make any specific findings about Plaintiff's childcare activities. Additionally, the record contains evidence that Plaintiff did not provide much care for her son on her own and that she relied on her parents and her son's father to assist her with childcare activities. Tr. 60, 101-02, 111, 391-92.

Without further explanation of how the ALJ found Plaintiff's daily activities to be inconsistent with Plaintiff's allegations, this was not a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 2. Conservative Treatment

The ALJ found the severity of Plaintiff's symptom complaints was not supported by Plaintiff's treatment record, which the ALJ characterized as "relatively routine." Tr. 39. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact

that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"). In support of this conclusion, the ALJ cited to one treatment note indicating Plaintiff took medication for pain and received several epidural steroid injections. Tr. 545. However, the ALJ failed to discuss evidence in the record that Plaintiff's pain was not sufficiently managed with this treatment. *See, e.g.,* Tr. 545-47 (reporting decreased pain relief from epidural injections over time); Tr. 440 (reporting ongoing pain after disc replacement surgery). The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison*, 759 F.3d at 1017 n.23. The single treatment note cited by the ALJ does not provide substantial evidence to support a finding that Plaintiff's pain was less severe than alleged because it was adequately addressed through conservative treatment measures.

### 3. Lack of Supporting Medical Evidence

The ALJ found the severity of Plaintiff's symptom complaints was not consistent with the medical evidence. Tr. 32-38. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341,

ORDER - 16

346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011). Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found that the objective evidence in the record failed to support Plaintiff's physical symptom claims. Tr. 32-34 (*citing* Tr. 427 (October 14, 2010: minimally to very mildly abnormal electrodiagnostic study suggested very mild chronic left C6 radicular change); Tr. 423 (August 4, 2011: unremarkable electrodiagnostic study); Tr. 472-74 (June 11, 2012: physical examination showed decreased range of motion in cervical spine; range of motion within normal limits in lumbar spine, hips, knees, ankles, shoulders, elbows, wrists; Plaintiff was well muscled with good bulk and tone with 5/5 strength bilaterally); Tr. 522 (August 5, 2013: x-rays showed lower cervical mild disc height loss and endplate degeneration, normal thoracic spine, and mild disc degeneration in the lumbar spine); Tr. 525 (December 20, 2013: MRI showed disc disease at C3-4 level abutting the C4 nerve rootlet, borderline mild central canal stenosis, and right side C5-6 and C4-5 facet joint effusions); Tr. 527 (January 6, 2014: MRI showed disc disease at the L1-2 level borderline mildly encroaching the transiting L2 nerve

root); Tr. 654 (September 8, 2014: x-rays showed degenerative changes present at C6-C7); Tr. 530-31 (August 3, 2015: physical examination showed unremarkable gait, heel-toe walk normal, Romberg test normal, range of motion within normal limits except in neck and back, negative straight leg tests, full muscle strength, muscle bulk and tone normal throughout, and no foot drop observed); Tr. 560 (October 5, 2015: EMG and nerve conduction studies normal); Tr. 563 (November 3, 2015: MRI showed mild spinal canal narrowing and moderate right foraminal narrowing at C6-7 and mild spinal canal narrowing at C3-4 and C4-5); Tr. 655 (April 7, 2016: physical examination showed limited cervical range of motion, flexion within normal limits, extension causing pain, full bilateral upper extremity strength, and right side weakness secondary to lack of effort with shoulder extension and intrinsic muscles of the hand); Tr. 750-51 (May 31, 2016: physical examination showed no clear evidence of pain behavior but visible discomfort during examination, limited range of motion in neck and spine, positive upper limb tension test, negative shoulder and elbow examination, and positive straight leg raise test)).

The ALJ also found that the record contained sparse evidence of ongoing mental health treatment to support Plaintiff's mental impairment claims. Tr. 34-35; *citing* Tr. 436 (January 3, 2012: Plaintiff presented for recheck on depression); Tr. 468 (May 23, 2013: consultative examiner observed Plaintiff "does not appear

to have pursued long-term psychological support for anxiety or depression); Tr. 567-68 (August 26, 2015: Plaintiff presented complaining of depression and was tearful during the appointment).

The ALJ failed to identify what in Plaintiff's symptom testimony was inconsistent with the evidence or to explain how the evidence was inconsistent. Here, the ALJ merely summarized Plaintiff's testimony, Tr. 31-32, and summarized the medical evidence, Tr. 32-35. Indeed, the ALJ's reasoning is unclear because some of the evidence identified by the ALJ could reasonably support Plaintiff's symptom allegations. *See, e.g.,* Tr. 525 (December 20, 2013: MRI showed disc disease at C3-4 level abutting the C4 nerve rootlet, borderline mild central canal stenosis, and right side C5-6 and C4-5 facet joint effusions); Tr. 563 (November 3, 2015: MRI showed mild spinal canal narrowing and moderate right foraminal narrowing at C6-7 and mild spinal canal narrowing at C3-4 and C4-5); Tr. 655 (April 7, 2016: physical examination showed limited cervical range of motion, flexion within normal limits, extension causing pain, full bilateral upper extremity strength, and right side weakness secondary to lack of effort with shoulder extension and intrinsic muscles of the hand). The ALJ failed to sufficiently explain why the claims were discredited. *Thomas*, 278 F.3d at 958.

Even if the ALJ's conclusion is supported by substantial evidence, the ALJ's finding would not be legally sufficient. Because the other reasons the ALJ

ORDER - 19

identified to discredit Plaintiff's symptom testimony were not supported by substantial evidence, the ALJ's rejection of Plaintiff's symptom claims would be based solely on the lack of supporting objective medical evidence, which may not be the only factor on which an ALJ's symptom testimony evaluation may be based. *Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d at 346-47; *Fair*, 885 F.2d at 601.

Overall, the ALJ's rejection of Plaintiff's symptom testimony is not supported by substantial evidence. *Ghanim*, 763 F.3d at 1163. The ALJ is instructed to reevaluate Plaintiff's symptom testimony on remand.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of Brian Hiller, PA-C, and George Magley, M.D. ECF No. 18 at 11-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

Mr. Hiller, a treating provider, rendered three different opinions in the record, two of which are signed by George Magley, M.D. Tr. 355-56, 415-18, 420-22. As a physicians' assistant, Mr. Hiller is an "other source."[2] *See* 20 C.F.R.

_____

[2] Although Mr. Hiller is an other source, Dr. Magley is an acceptable medical source who reviewed Mr. Hiller's findings. Tr. 415-18, 420-22. The ALJ failed to address the presence of Dr. Magley's opinion in the record. Tr. 35-38.

ORDER - 21

§§ 404.1502(a)(8), 416.902(a)(8) (including licensed physician's assistants as acceptable medical sources for impairments within their licensed scope of practice "only with respect to claims filed . . . on or after March 27, 2017"). The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.923(d) (2013). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

On October 7, 2010, Mr. Hiller diagnosed Plaintiff with herniated/dislocated discs in the cervical/thoracic/lumbar region and opined that her impairments limited her ability to lift, stand, and bend to no more than 10 hours per week; that Plaintiff was capable of lifting and carrying at the sedentary level; and that Plaintiff's condition would likely limit her ability to work, look for work, or train

ORDER - 22

for work for 12 months. Tr. 355-56. The ALJ gave this opinion partial weight. Tr. 37.

On February 9, 2011, Mr. Hiller found Plaintiff had 50% reduced range of motion in her cervical spine; diagnosed Plaintiff with cervical, thoracic, and lumbar degenerative disc disease; and opined that Plaintiff had severe limitations in her ability to lift, handle, and carry; that Plaintiff had restricted mobility, agility, or flexibility in bending, crouching, pulling, and pushing; that Plaintiff was capable of performing sedentary work; that Plaintiff's limitations on work activities were expected to last at least 12 months without medical treatment; and that Plaintiff was able to participate in pre-employment activities. Tr. 415-18. Dr. Magley also signed the assessment. Tr. 418. The ALJ gave this opinion significant weight. Tr. 37.

On June 14, 2011, Mr. Hiller diagnosed Plaintiff with cervical, thoracic, and lumbar degenerative disc disease and opined that Plaintiff's impairments caused Plaintiff to be unable to lift, carry, walk, sit, and travel; that Plaintiff's impairments caused difficulty in communicating, traveling, and standing such that she would be unable to prepare for and look for work; that Plaintiff was capable of lifting and carrying at the sedentary level; that Plaintiff's impairments impacted her ability to make and keep appointments and use transportation services; and that Plaintiff's condition would limit her ability to work for six months. Tr. 420-22. Dr. Magley

also signed the assessment. Tr. 422. The ALJ gave this opinion partial weight.

Tr. 37.

First, the ALJ discredited the October 2010 and June 2011 opinions because the ALJ found that the severity of impairment Mr. Hiller opined was not supported by the treatment records. Tr. 37. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001). However, the ALJ failed to identify what medical evidence was inconsistent with the limitations Mr. Hiller opined. Tr. 37. As discussed *supra*, the ALJ's discussion of the medical evidence merely summarizes the treatment records and offers no interpretation thereof. Indeed, some of the evidence the ALJ identified can reasonably support Plaintiff's disability allegations. Furthermore, it is not clear what evidence in the record supports Mr. Hiller's February 2011 opinion but fails to support the October 2010 and June 2011 opinions. This finding is not supported by substantial evidence.

Second, the ALJ discredited the October 2010 and June 2011 opinions because Mr. Hiller was not a medically acceptable source. Tr. 37. The ALJ is required to consider evidence from non-acceptable medical sources. 20 C.F.R. §§ 404.1527, 416.927 (2012). Although an individual's status as a medically acceptable source may impact the amount of deference the ALJ gives to an opinion, the ALJ may not reject an opinion as to a claimant's limitations because

ORDER - 24

the opinion comes from a non-acceptable medical source.  20 C.F.R. §§ 404.1527, 416.927 (2012).  Furthermore, it is inconsistent for the ALJ here to discredit two of Mr. Hiller's opinions for being from a non-acceptable medical source while giving significant weight to a third opinion from the same source.  Tr. 37.  Finally, as to the June 2011 assessment, Dr. Magley, an acceptable medical source, signed the assessment, Tr. 422, a fact that the ALJ did not recognize or address.  This is not a germane reason to discredit Mr. Hiller's opinions.

Third, the ALJ discredited Mr. Hiller's June 2011 opinion because the ALJ found that the opinion was rendered on a form which was "not designed for objective responses, but rather for verification of legal conclusions about the claimant's alleged impairments."  Tr. 37.  "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."  *Lester*, 81 F.3d at 832 (citing *Ratto v. Sec'y, Dept. of Health and Human Servs.,* 839 F. Supp. 1415, 1426 (D. Or. 1993)).  An ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits."  *Id.*  While the ALJ "may introduce evidence of actual improprieties," no such evidence was cited by the ALJ.  *Id*.  This was not a germane reason to discredit Mr. Hiller's opinions.

Fourth, the ALJ discredited Mr. Hiller's October 2010 opinion because it predated Plaintiff's alleged onset date.  Tr. 37.  Medical opinions from before the alleged onset date are of limited relevance to the ALJ's disability determination.

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). However, Mr. Hiller's October 2010 opinion predates Plaintiff's alleged onset date by only 18 days. *Compare* Tr. 357 *with* Tr. 322-29. Plaintiff attributes her impairments to injuries that occurred in two different motor vehicle collisions in October 2008 and July 2010. Tr. 746. Accordingly, it is not clear that Mr. Hiller's October 2010 opinion does not reflect Plaintiff's allegedly disabling impairments because of the date on which it was rendered.

The ALJ failed to provide germane reasons supported by substantial evidence to discredit Mr. Hiller's October 2010 and June 2011 opinions. Moreover, the ALJ failed to recognize and address the fact that two of the opinions were signed by Dr. Magley, an acceptable medical source. The ALJ is instructed to reevaluate the medical opinion evidence on remand.

**C. Lay Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of lay opinion evidence from Plaintiff's mother, Kim Corwin. ECF No. 18 at 16-20.

An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. §§

404.1513, 416.913 (2013); *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).

Ms. Corwin submitted a declaration stating that Plaintiff was involved in three different car accidents, that Plaintiff was able to work after her first car accident, that Plaintiff's injuries became significantly worse and she experienced increased pain after the second accident, that Plaintiff struggled with movement including lifting and carrying her son, that Plaintiff responded positively to therapy and epidural shots, that Plaintiff's symptoms worsened again after the third accident, that Plaintiff had surgery and has not found lasting pain relief with treatment, that Plaintiff's pain limits her daily activities, that Plaintiff struggles with remembering important information, that Plaintiff's loss of independence and inability to perform daily activities has caused Plaintiff sadness and depression, and that Plaintiff was unable to work. Tr. 391-93. The ALJ did not specify what level of weight he gave Ms. Corwin's testimony, but found that it did not establish Plaintiff was disabled and could not be given significant weight. Tr. 38. The ALJ was required to give germane reasons to discredit this testimony. *Nguyen*, 100 F.3d at 1467.

First, the ALJ found Ms. Corwin's testimony was less credible because she is not medically trained, thus "the accuracy of her statements are questionable." Tr. 38. Although "medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence," lay testimony "as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence." *Nguyen*, 100 F.3d at 1467 (emphasis in original); *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). This was not a germane reason to discredit Ms. Corwin's testimony.

Second, the ALJ found Ms. Corwin's testimony was less credible because as Plaintiff's mother she is not a disinterested party in this case. Tr. 38. "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (internal citations omitted). Ms. Corwin's relationship to Plaintiff was not a germane reason to discredit her testimony.

Third, the ALJ found Ms. Corwin's testimony was less credible because it was not consistent with the medical evidence. Tr. 38. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis*, 236 F.3d at 511-12 (germane reasons include

ORDER - 28

inconsistency with medical evidence, activities, and reports). However, the ALJ failed to identify what medical evidence was inconsistent with the limitations Ms. Corwin opined. Tr. 38. As discussed *supra*, the ALJ's discussion of the medical evidence merely summarizes the treatment records and offers no interpretation thereof. Indeed, some of the evidence the ALJ identified can reasonably support Plaintiff's disability allegations. The ALJ's conclusion is not supported by substantial evidence.

The ALJ failed to provide germane reasons supported by substantial evidence to discredit Ms. Corwin's testimony. The ALJ is instructed to reconsider the lay opinion evidence on remand.

**D. Remedy**

Plaintiff urges this Court to remand this case for an immediate award of benefits. ECF No. 18 at 20. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Even if the ALJ were to fully credit Plaintiff's symptom testimony and the medical and lay opinion evidence discussed *supra*, the evidence would still present outstanding conflicts for the ALJ to resolve. Specifically, examining physicians Dr. Ramsthel and Dr. Leinenbach opined that Plaintiff was capable of performing sedentary work, Tr.

474, 533-37, and the ALJ gave these opinions significant weight. Tr. 36.

Therefore, further proceedings are necessary for the ALJ to reconsider the evidence

and to weigh the conflicting evidence.[3] On remand, the ALJ should take testimony

from a medical expert and reconsider Plaintiff's symptom testimony, the medical

opinion evidence, and the lay opinion evidence, and to reformulate the RFC as

necessary.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the

ALJ's decision is not supported by substantial evidence and free of harmful legal

error. Accordingly, **IT IS HEREBY ORDERED**:

_____

[3] Plaintiff raised as an issue but failed to develop any argument as to the

sufficiency of the number of jobs in the national economy identified by the ALJ at

step five. ECF No. 18 at 2. In light of this remand order, the Court further

instructs the ALJ to identify jobs that exist in a significant number in the national

economy that Plaintiff can perform, should the sequential evaluation on remand

proceed to step five. *See Guitierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29

(9th Cir. 2014) (finding 25,000 jobs in the national economy to be a "close call"

but a sufficiently significant number); *Beltran*, 700 F.3d at 390 (1,680 jobs in the

national economy is not a significant number).

ORDER - 31

1. Plaintiff's Motion for Summary Judgment, ECF No. 18, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 22, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED January 22, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE